IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FILED

JAN 1 0 2014

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

————————————

WHEELER ZAMICHIELI            :

     Plaintiff              :

                           :

     VS.                   :     CIVIL ACTION
                           :     NO. 12-cv-3200-GMS

WILLIAM ANDREWS, ET AL.,      :

     Defendants,            :

————————————

**PLAINTIFF'S THIRD AMENDED COMPLAINT**

Introduction

1.    This action for money damages is brought pursuant to the
Fourth, Fifth, and Fourteenth Amendment to the United States
Constitution, incorporated with Pennsylvania Common Law, and
Title 42 U.S.C. § 1983, 1985, 1986, 1988, as well as, Bivens
vs. Six Unknown Named Agents Of The Federal Bureau Of Narco-
tics, 402 U.S. 388, 91 S. Ct. 199, 29 L.ed.2d 619 (1971). Jur-
isdiction is based upon 28 U.S.C. § 1331, 1343, 1346(b) and
supplemental jurisdiction of the court under 28 U.S.C. § 1367
(a) for claims arising under state law. Venue is in the Eastern

(1)

District of Pennsylvania, pursuant to 28 U.S.C. § 1391, for it is where the events giving rise to this claim occurred.

## Parties

2. The following person is the plaintiff in this action:
a. Wheeler Zamichieli, Inst#67271-066, detained at The Federal Detention Center of Philadelphia, 700 Arch Street, Phila, PA. 19105

3. The following persons are defendants in this action:
a. William Andrews, an officer with the Philadelphia Police Department. For purpose of this litigation, defendant's address is 1515 Arch Street, Civil Rights Law Dept., Phila, PA. 19102-1595. At all times material to this complaint, Andrews was on duty as a Police Officer. He is being sued in his official and individual capacity.

b. Melvin Victor, an officer with the Philadelphia Police Department. For purpose of this litigation, defendant's address is 1515 Arch Street, Civil Rights Law Dept., Phila, PA. 19102-1595. At all times material to this complaint, Victor was on duty as a Police Officer. He is being sued in his official and individual capacity.

(2)

c. Ronald Dove, Homicide Detective with the Philadelphia Police Department. For purpose of this litigation, defendant's address is 1515 Arch Street, Civil Rights Law Dept., Phila, PA. 19102-1595. At all times material to this complaint, Dove was on duty as a Homicide Detective. He is being sued in his official and individual capacity.

d. The City of Philadelphia, an incorporated municipality organized by and through the Commonwealth of Pennsylvania. For purpose of this litigation, The City's address is 1515 Arch Street, Civil Rights Law Dept., Phila, PA. 19102-1595. The City of Philadelphia is being sued as a Municipality.

e. Patrick Henning, an U.S. ATF Agent with the Dept., of Justice. For purpose of this litigation, defendant's address is 950 Pennsylvania Avene NW, Washington, DC 20530. At all times material to this complaint, Henning was on duty as an ATF Agent. He is being sued in his individual capacity.

f. Zane David Memeger, U.S. Attorney with the Dept., of Justice. For purpose of this litigation, defendant's address is 950 Pennsylvania NW, Washington, DC 20530. At all times material to this complaint, Memeger was on duty as the U.S. Attorner. He is being sued in his individual capacity.

(3)

g. Virginia Paige Pratter, Assistant U.S. Attorney with the Dept., of Justice. For purpose of this litigation, defendant's address is 950 Pennsylvania Avenue NW, Washington, DC 20530. At all times material to this complaint, Pratter was on duty as the AUSA. She is being sued in her individual capacity.

4. At all times material to this complaint, defendants, Dove, Andrews, Victor, and The City of Philadelphia were acting under color of state law, to wit, the statutes, ordinances, regulations, policies, customs, training, and usages of the Commonwealth of Pennsylvania, and county of Philadelphia.

5. At all times material to this complaint, defendants, Memeger, Pratter, and Henning were acting under color of law, while performing duties on behalf of the United States of America.

### Facts

6. On 2/20/11 at 2:27am, defendants, William Andrews and Melvin Victor were surveying the area after a founded shooting at 2nd and Linton Street, when they stop the Plaintiff's vehicle at Beechwood and Church Lane, with their weapons drawned on Plaintiff.

(4)

7.      Defendant Victor approaches the driver side of Plain-
        tiff's vehicle, as Defendant Andrews on the passenger
        side some feet behind for safety procedures. Andrews opens
        the passenger side door and without probable cause, con-
        ducts a warrentless search, as Victor removes Plaintiff
        from the vehicle. Subsequent to the search, Andrews re-
        covers a firearm from under the front passeger seat of the
        vehicle.

8.      Plaintiff was arrested and transported from the traffic
        stop location to the Police Headquarters at 8th and Race
        Streets, and detained for over 10 hours in the Homicide Unit,
        without probable cause. Following said detention, Plaintiff
        was transferred into the general Intake Unit, and processed
        for the firearms violation.

9.      Defendant Victor testified in the U.S. District Court that,
        " this was a normal traffic stop and they were no longer
        searching for suspects in the shootings at that time " Id.
        at 30, 53-54 Suppression Hearing. See Exhibit A, Court Opin-
        ion, page 1. Plaintiff argues that, he was illegally searched
        and arrested, as a result of being profiled for the shootings
        at 2nd and Linton Street, which lead to his detention in the
        Homicide Unit.

(5)

11.    Defendant Andrews who conducted the warrentless search
       and made the challenging arrest did not prepare or file
       any Police Reports regarding Plaintiif's arrest, nor did
       Defendant Victor.

12.    Homicide Detective Ronald Dove prepared and filed the Phila-
       delphia Police Department Arrest Report of Plaintiff, after
       allegely interviewing Defendant Victor who stated that, "
       upon approaching the vehicle, the operator turned on his
       interior lights, and P/O Andrews observed a gun on the pas-
       senger side and immediately alerted his partner. The oper-
       ator was removed from the vehicle, and a 38 caliber Rossi
       revolver was recovered ".  See Exhibit B, Arrest Report.

13.    Defendant Dove did not interview Andrews in regards to where
       he seen the firearm in plain-view, in justifying the except-
       tion to the warrent requirement. In the District Court, Vic-
       tor testified that, "he never seen where Andrews found the
       gun" Id. at 57-58, page 2 of Court Opinion. Plaintiff argues
       that, his 4th Amendment Rights were clearly established, and
       there was a realistic and reasonable opportunity for Dove to
       intervene by interviewing Andrews, and preparing a Report on
       his account and not Victor's.

14.    At the preliminary hearing in the Municipal Court of Phila.,
       Defendant Dove or Victor did not appear to testify of the

(6)

arrest of Plaintiff. Defendant Andrews was questioned by
Plaintiff's attorney who asked Andrews, "did you prepare
a report in this case", but the prosecutor objected, and
the court sustained the objection. See Exhibit C, 4/26/11
Transcripts, Id. at page 14 paragraph 24. Plaintiff argues
that, there was every reason for Dove and Victor to testify,
because Andrews didnt prepared the report.

15.  Further into the preliminary hearing, Andrews gave different
accounts to where he seen the firearm in plain-view (1) "I
recovered a .38 revolver from the front seat of defendant's
vehicle", (Id. at page 5 paragraph 16-17) (2) "Upon me appro-
aching on the passenger side, I observed in plain-view a 38
revolver [u]nder the passenger seat", (Id. at page 9 paragraph
9-11) and (3) "It was [o]n the passenger seat sir", (Id. at
page 9 paragraph 19-21). See Exhibit C.

16.  Lastly, Andrews testified that, "I cannot tell you whether the
windows were up or down, but it was right there in the front
seat and the doors was closed", (Id. at page 14 paragraph 19-
22. See Exhibit C.

17.  Defendants, Victor, Dove, and Andrews combined together, in vio-
lation of Plaintiff's 4th and 14th Amendments Rights of the U.S.
Constitution, and conspired to the fabrication of a story of the
firearm being in plain-view, in an attempt to justify the illegal

(7)

search and arrest of Plaintiff. Defendants falsified arrest reports, falsely arrested/imprisoned Plaintiff without probable cause, and maliciously prosecuted him.

18.   The City of Philadelphia is liable as a Municipality, due to it's deficient Stop & Frisk Policy. The Defendant violated Plaintiff's Constitutional Rights by failing to properly train and/or supervise it's officers/employees in proper procedures for arresting suspects and charging them with crimes. The Defendant's policies and customs with regard to the training and supervision of its officers on these issues, led to the violation of Plaintiff's Rights.

19.   After Plaintiff's arrest on 2/20/11, Federal Defendant, Patrick Henning, easrly as 2/28/11 pursued an investigation of Plaintiff, before a prima facie case could be established, See Exhibit D, ATF Investigation Report. Defendant also investigated Plaintiff's prior criminal history on 3/31/11, See Exhibit E, ATF Investigation Report. Plaintiff argues that, Defendant was pursuing a malicious prosecution of Plaintiff, and other than for a purpose of bringing him to justice.

20.   Even after Defendant Andrews contradicting accounts of the firearm in plain-view, at the preliminary hearing on 4/26/11, Defendant Zane David Memeger on 7/12/11 without probable cause,

(8)

launched a malicious prosecution of Plaintiff, adopting the state arrest. Defendant knew that Plaintiff's 4th Amendment Rights were clearly established, and through his investigations knew/or should have known that, those rights were violated by Defendants, Andrews, Victor, and Dove.

21.     A Criminal Complaint and Arrest Warrent/Affidavit was prepared by Defendant Henning, and on 7/13/11, Henning executed an arrest warrent outside of the Criminal Justice Center of Philadelphia, taking Plaintiff into custody.

22.     After Henning falsely arrested/imprisoned Plaintiff without probable cause, and maliciously prosecuted him in violation of his U.S. Constitutional Rights, Henning furthered his investigation. He searched the area of Broad and Erie Streets on 7/13/11, until he found Plaintiff's vehicle located on the 3700 block of Carlise Street. Defendant Henning took photographs of Plaintiff's vehicle, which is in fact, the same vehicle Plaintiff was arrested in, on 2/20/11. See Exhibit F, 1/30/13 Transcripts, page 51, under Indictment No. 12-182.

23.     The photographs taken by Defendant Henning, displays very dark tinted windows, which prohibited Defendant Andrews from seeing inside of the Plaintiff's vehicle on the night of his arrest. Defendant Pratter with-held evidence of the photograph, but disclosed it later, in subsequent Indictment No. 12-182. See Governments Exhibit 2b, Newly Discovered Evidence, Exhibit G.

(9)

24.      As a result of the Governments adoption of the state arrest
by Federal Defendants, an Indictment was filed against the
Plaintiff, on 7/19/11, under Case No. 11-393. Plaintiff
appeared before a U.S. Magistrate Judge, and Defendant Vir-
ginia Paige Pratter argued against Plaintiff's Rights to
bail. Plaintiff was denied bail, and held in un-lawful pre-
trial detention at the Federal Detention Center of Phila-
delphia, between 7/13/11-12/18/11.

25.      Defendant Pratter continued in a malicious prosecution of
Plaintiff, in violation of his U.S. Constitutional Rights.
Defendant through her investigation of the **photograph, pre-
liminary hearing transcripts,** and **arrest report prepared by**
Dove, knew/or should have known that Andrews and Victor did
not have the requitisite probable cause to conduct a warrent-
less search, and violated Plaintiff's clearly established
rights. Defendant caused Plaintiff to suffer loss/injury.

26.      On 11/21/11, Plaintiff appeared before U.S. District Judge,
Berle M. Schiller, in a Motion to Suppress Evidence, under
Indictment No. 11-393, resulting from the state arrest. At
the hearing, Andrews testified that, "**he seen the firearm
in plain-view on the passenger seat**". Plaintiff's attorney
entered into evidence the preliminary hearing transcript,
showing that Andrwes testified that, " I **observed in plain-
view a 38 revolver [u]nder the passenger seat.**

27.   Defendant Andrews testified that, "he seen the firearm through a closed door", so Plaintiff's attorney entered into evidence a photograph of Plaintiff standing next to his vehicle during the day, before his arrest. The photograph displaying dark tinted windows, making it impossible for Defendant Andrews to have seen the firearm inside of the vehicle in the dark of the night, **Id**. at page 63, **of Exhibit A, page 2.**

28.   Defendant Victor was called to testified at the hearing, and stated, "as he approached the vehicle during the traffic stop, plaintiff turned on his interior lights, and asked, why was he pulled over". Victor testified that, "he did not asked plaintiff for his license, registration, and insurance while he was in the car" and lastly, "nor did he see where Andrews recovered the gun", Id. at pages 57-60. See Exhibit A. page 2.

29.   Ultimately, Judge Schiller found Andrews and Victor's testimony implausible, and ruled in his 12/9/11 Opinion that, Andrews and Victor violated Plaintiff's Fourth Amendment Rights of the U.S. Constitution. See United States v. Wheeler Zamichieli, 2011 U.S. Dist. Lexis 141610 (Dec. 2010). Exhibit A.

30.   On 12/13/11, Indictment No. 11-393 was terminated in Plaintiff's favor, and he was released from federal custody on 12/18/11, after having spent 158 days at FDC Philadelphia.

31.   As a direct and proximate result of the intentional,
      reckless and/or negligence actions and omission of all
      the defendants set forth in this complaint, Plaintiff
      was deprived of his liberty, and without procedural and
      substantive Due Process of law, forced Plaintiff to en-
      dure immeasurable physical, emotional and mental pain.
      Sufferrings of great distress, seperation from society,
      seperation from elderly Mother (her care-taker), loss of
      parental consortium, loss of companionship, loss of work/
      wages, loss of vehicle, and was required to expend monies
      defending the illegal arrest.

### Legal Claim

### COUNT I

42 U.S.C. § 1983 cause of action
against William Andrews, Melvin Victor, and Ronald Dove
4th Amendment

32.   Paragraph 1 through 31 incorporated herein by reference as
      though fully set forth.

      At all times material to this complaint, Defendant Andrews,
      Victor, and Dove, while acting under color of state law, de-
      prived Plaintiff of his 4th Amendment Rights of the U.S. Con-
      stitution, to be free from illegal searches and seizures, which
      caused Plaintiff to suffer loo and injury. The charges against
      Plaintiff, was terminated in his favor on 12/09/11, by U.S. Dis-

trict Judge Berle M. Schiller, finalizing the 4th Amendment
violation committed by Defendants.

Plaintiff asserts his Rights against Defendants Victor, Dove,
and Andrews, barring them from re-litigation of this Fourth
Amendment Claim in this action, pursuant to The Doctrine
Of Collateral Estoppel. Plaintiff is entitled to recover
a monetary award for compensatory, and punitive damages, un-
der 42 U.S.C. § 1983, as well as attorney's fees, under 42
U.S.C. § 1988, against Defendants.

## COUNT II

### 42 U.S.C. § 1983 cause of action
### against The City of Philadelphia
### Municipal Liability

33. Paragraph 1 through 31 are incoporated, by reference set forth.

33. At all times material to this complaint, the City of Phila-
delphia, while acting under color of state law, violated the
Plaintiff's 4th & 14th Amendment Rights secure by the U.S.
Constitution, incorporated by Pennsylvania Common Law, by its
employees/officers, Andrews, Victor, and Dove. The City is
liable, through it's final policy making authoriting, and in-
stitution of the Stop & Frisk Policy, and procedures. The City
knew about the need for training regarding proper procedures
for arresting suspects and charging them with crimes. The City
was responsible for acquiesced, and/or deliberate indiffence
through policy, custom, and/or procedure of failing to:

    (a) properly and adequately train, test, and instruct
        Andrews, Victor, and Dove on proper procedures for

(13)

arresting suspects and charging them with crimes:

(b) Properly supervise and/or control its officers/employees:

(c) develop, implement, carry out, and maintain proper personnel training, policies, practices, customs, and/or procedures necessary to prevent the charging of suspects with crimes for which the officers do not have probable cause.

The City of Philadelphia directed and/or knew of an acquisesced in Andrews, Victor and Dove's wrongful conduct. Defendants acts omission while performing duties on behalf of the City of Philadelphia, caused Plaintiff to suffer loss and injury. The City was the proximate cause for the violations by Defendants, and is liable, entitling Plaintiff a monetary award of compensatory, and puntive damages, under 42 U.S.C. § 1983, and recover attorney's fees under 42 U.S.C. § 1988.

## COUNT III

Common Law Malicious Prosecution
against William Andrews, Melvin Victor
Ronald Dove, incorporated to the 4th amendment

34.    Paragraph 1 through 33 are incorporated herein by reference as though fully set forth.

At all times material to this complaint, Defendant William Andrews, Melvin Victor, and Ronald Dove, while acting under color of state law, deprived Plaintiff of his 4th and 14th Amendment Rights of the U.S. Constitution, to be free from

illegal seizures/unlawful pre-trial detention without
probable cause, and malicious prosecution, incorporated by
Pa. Common Law. The defendants caused Plaintiff to suffer
loss and injury, and they are liable for damages from the
institution of criminal proceedings against Plaintiff with
malice and without probable cause. Said proceedings against
Plaintiff was terminated in his favor, which entitles him
to compensatory, punitive damages, as well as attorneys
fee's, under 42 U.S.C. § 1983, 1988.

### COUNT IV
Common Law Conspiracy claim
against William Andrews Melvin Victor
and Ronald Dove

35.     Paragraph 1 through 31 incorporated herein by reference
as though fully set forth.

At all times material to this complaint, William Andrews,
Melvin Victor, and Ronald Dove, while acting under color of
state law, deprived Plaintiff of his U.S. Constitutional Ri-
ghts to Due Process under the 14th Amendment, incorporated
by Pennsylvania Common Law, whichhcaused Plaintiff to suffer
loss and injury. The Defendants are liable for Plaintiff's
injuries, resulting from the fact that, they combined and con-
spired together, to employ illegal means for an illegal pur-
pose wrongfully imprisoning Plaintiff. The charges against
Plaintiff were terminated in his favor, which entitles him
to compensatory and punitive damages, as well as recovery of

attorney's fees, under 42 U.S.C. § 1983, 1985-86, **1988.**

## COUNT V
Common Law claim against
William Andrews Melvin Victor Ronald Dove
False arrest and False imprisonment

36.     Paragraph 1 through 31 are incorporated herein by reference
as though fully set forth.

At all times material to this complaint, William Andrews,
Melvin Victor, and Ronald Dove, while acting under color
of state law, deprived Plaintiff of 14th Amendment Rights
of the U.S. Constitution, incorporated by Pennsylvania Com-
mon Law, causing Plaintiff to suffer lose and injury. The
Defendants deprived Plaintiff of his liberty and Equal Pro-
tection Rights, without procedural and substantive Due Pro-
cess of Law. The Defendants are liable for damages, as a
result of their intentional and unjustified arrest/confine-
ment of Plaintiff. The charges against Plaintiff were term-
inated in his favor, which he now is entitled to compensatory
and puntive damages, as well as attorney's fees, under 42 §
1983 and 1988.

## COUNT VI
Bivens cause of action against
Zane David Memeger, Virginia Paige Pratter
and Patrick Henning, 4TH Amendment Claim

(15)a

37.     Paragraph 1 through 31 are incorporated herein by reference
        as though fully set forth.

        At all times material to this complaint, Defendants, Zane
        David Memeger, Virginia Paige Pratter, and Patrick Henning,
        while acting under color of law, deprived Plaintiff of his
        4th Amendment Rights of the U.S. Constitution, to be free
        from illegal seizures/unlawful pre-trial detentions, with-
        out probable cause and malicious prosecution. The Defendants
        caused Plaintiff to suffer loss and injury, as a result of
        unlawful pre-trial detention for 158 days in federal custody.
        The Defendants are liable for damages, from their institution
        of criminal proceedings against Plaintiff without probable,
        and with malice. Said proceedings against Plaintiff were ter-
        minated in his favor, which entitles him to compensatory,
        punitive damages, and attorney's fees, under Bivens and 42
        U.S.C. § 1988.

                            COUNT VII
                    Bivens cause of action
        against Zane David Memeger, Virginia Paige Pratter
            and Patrick Henning, 5th Amendment Claim

37.     Paragraph 1 through 31 are incorporated herein by reference
        as though fully set forth.

        At all times material to this complaint, Defendants, Zane
        David Memeger, Virginia Paige Pratter, and Patrick Henning

while acting of color of law, deprived Plaintiff of his 5th Amendment Right of the U.S. States Constitution, to Equal Protection and Due Process of law, which caused the Plaintiff to suffer loss and injury. Plaintiff was deprived of his libery, without procedural and substantial Due Process. The Federal Defendants are liable for damages, as a result of their intentional and unjustified arrest/confinement of Plaintiff. The charges for which Plaintiff Rights were violated by Defendant, have been terminated in his favor, which now entitles Plaintiff to recover compensatory and punitive damages, for their negligence, as well as attorney's fees, under 42 U.S.C. § 1988, and BIVENS.

Wherefore, Plaintiff request Judgement in his favor.

DATE: JANUARY 8, 2014                    RESPECTFULLY SUBMITTED,

                                         WHEELER ZAMICHIELI

(17)

## PRAYER FOR RELIEF

Wherefore, Plaintiff pray that this court enter Judgement:

38. Declaring defendants, Andrews, Victor, and Dove liable for Civil monetary damages to Plaintiff, for violating his Rights guaranteed under the Fourth Amendment of the U.S. Constitution.

39. Declaring the City of Philadelphia liable as a Municipality, and award Plaintiff damages in the amount of $500,000.

40. Granting Plainting compensatory damages against Victor and Andrews jointly and severally for $250,000.

41. Granting Plaintiff punitive damages against Victor, Andrews, and Dove for 1,000,000, jointly and severally.

42. Declaring judgement against Federal Defendants, and granting an award of monetary compensatory damages, jointly and severally against all federal defendants for $300,000.

43. Granting Plaintiff punitive damages against all federal defendants, jointly and severally, in the amount of 500,000.

44. Granting Plaintiff recovery of attorney's fees, expended defending the arrest/Civil Action, their cost with interest, against all DEFTS.

DATE: JANUARY 8, 2013

RESPECTFULLY SUBMITTED,

(18)

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims that can be tried.

DATE: JANUARY 8, 2014

RESPECTFULLY SUBMITTED,

WHEELER ZAMICHIELI

(19)

## CERTIFICATE OF SERVICE

I hereby certify that, a true and correct copy of Plain-
tiff's Third Amended Complaint, has been served upon the per-
sons listed below: and for ECF1ng

FILED

JAN 1 0 2014

MICHAEL E. KUNZ, Clerk
Dep. Clerk

THIS SERVICE IS BY CERTIFIED MAIL
ADDRESSED TO:

MAIL RECEIPT #7008 3230 0001 5914 5493

UNITED STATES DISTRICT COURT
CLERK OF COURTS
601 MARKET STREET
U.S. COURTHOUSE
PHILA, PA. 19106

DIMITRIOS MAVROUDIS, SOLICITOR
CIVIL RIGHTS LAW DEPT.
1515 ARCH STREET 14th FL.
PHILA, PA. 19102-1595

DATE: JANUARY 8, 2014

RESPECTFULLY SUBMITTED,

*Wheeler Zamichieli*

WHEELER ZAMICHIELI
INST#67271-066
FDC PHILA
P.O. BOX 562
PHILA, PA. 19105

(20)

EXHIBITS

EXHIBIT A

---

**UNITED STATES OF AMERICA v. WHEELER ZAMICHIELI**
**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
**2011 U.S. Dist. LEXIS 141610**
**CRIMINAL ACTION No. 11-393**
**December 9, 2011, Decided**
**December 9, 2011, Filed**

---

**Counsel**          For WHEELER **ZAMICHIELI**, A/K/A " TROY ZANICHIELI", Defendant:
MICHAEL K. PARLOW, LEAD ATTORNEY, GALLANT & PARLOW, BENSALEM, PA.
For USA, Plaintiff: VIRGINIA PAIGE PRATTER, DEPARTMENT
OF JUSTICE, PHILADELPHIA, PA.

**Judges:** Berle M. Schiller, J.

Opinion

**Opinion by:**          Berle M. Schiller

Opinion

**MEMORANDUM**

**Schiller, J.**

In a one-count indictment, the Government charged Wheeler **Zamichieli** as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Philadelphia police officers recovered the weapon underlying the charge during a traffic stop. **Zamichieli** now moves to suppress the gun that police found in the car he was driving, arguing that the officers' actions constituted an illegal search and seizure in violation of the Fourth Amendment. **Zamichieli** also seeks to suppress statements he made to the police after he was pulled over. The Court held a hearing on the motion on November 21, 2011. For the reasons that follow, the Court grants the motion.

**I. BACKGROUND**

At approximately 2:27 in the morning on February 20, 2011, Philadelphia Police Department Officers William Andrews and Melvin Victor were driving back to their district, having responded to several shootings in the adjacent district. (Nov. 21, 2011 Hr'g Tr. at 23-25, 45-46, 53.) At the intersection of Wister Street and West Nedro Avenue, the officers saw a red Chevrolet Impala speed through a stop sign and almost hit their patrol car. (Id. at 25, 46.) They turned on their lights and sirens and followed the Impala until it turned the wrong way on a one-way street and stopped. (Id. at 25, 46-47.) The officers testified that this was a normal traffic stop and that they were no longer searching for suspects in the shootings at the time. (Id. at 30, 53-54.)

Officer Andrews approached the Impala on the passenger side, Officer Victor on the driver side. (Id. at 26.) Officer Victor testified that the driver of the Impala, later identified as **Zamichieli**, turned on the interior dome light as the officers approached. (Id. at 47.) **Zamichieli** denied ever turning on the dome light. (Id. at 65.) **Zamichieli** turned and stuck his head out of the open window on the driver side, resting both arms on the window frame so that his body was facing Officer Victor, and asked why he had been pulled over. (Id. at 47-48.)

© 2013 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

67271066

EXHIBT A

Officer Andrews testified that he scanned the interior of the car as he approached, saw a .38 revolver sitting in plain view on the front passenger seat of the car, and yelled "Gun" to alert his partner. (*Id.* at 26, 47.) Officer Victor removed **Zamichiell** from the Impala, handcuffed him, and placed him in the back of the patrol car while Officer Andrews retrieved the firearm, which contained five spent shell casings. (*Id.* at 26, 49-50.) Officer Victor never saw where Officer Andrews found the gun. (*Id.* at 57-58.) Both officers testified that **Zamichiell** was cooperative at all times during the stop and did not make any suspicious or furtive movements. (*Id.* at 26, 36, 56.) The officers issued two citations for Zamichieli's traffic violations. (Gov't's Ex. 1; Nov. 21, 2011 Hr'g Tr. at 51-52.)

At the hearing, **Zamichiell** disputed Officer Andrews's claim that the gun was on the front passenger seat and testified that the gun was actually secreted under the front passenger seat. (*Id.* at 65, 70.) According to **Zamichiell**, the officers pulled him out of the car with guns drawn before conducting a search. (*Id.* at 64.) The defense introduced into evidence a picture of the Impala, allegedly taken the month before the traffic stop, showing that the car had tinted windows. (Def.'s Ex. 2; Nov. 21, 2011 Hr'g Tr. at 63.) **Zamichiell** also testified that the car doors and passenger-side window were closed when the officers approached. (*Id.* at 65.) Neither officer could remember whether the windows were tinted or whether the passenger-side window was up or down during the traffic stop. (*Id.* at 28-29, 38, 57-58.) Officer Victor confirmed that he did not ask for a driver's license, registration, or proof of insurance while **Zamichiell** was in the car. (*Id.* at 59-60.)

## II. STANDARD OF REVIEW

The movant bears the burden of proving, by a preponderance of the evidence, that the evidence in question should be suppressed. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (citing *United States v. Acosta*, 965 F.2d 1248, 1256 n. 9 (3d Cir. 1992)). "However, once the defendant has established a basis for his motion, *i.e.*, the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable." *Johnson*, 63 F.3d at 245.

## III. DISCUSSION

The initial traffic stop was lawful. "It is well-established that a traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations." *United States v. Moorefield*, 111 F.3d 10, 12 (3d Cir. 1997). In this case, the officers observed **Zamichiell** speed through a stop sign and drive the wrong way down a one-way street, both traffic violations under Pennsylvania law. *See* 75 Pa. Cons. Stat. §§ 3323(b); 3308(b).

Nonetheless, **Zamichiell** argues that the search and seizure of the gun during the traffic stop violated his Fourth Amendment rights. Weighing the evidence presented, the Court finds the officers' version of the story implausible. There was no reason for **Zamichiell** to turn on the dome light when he had already opened the driver-side window to speak with Officer Victor and was not asked to provide his paperwork-nor is it likely that **Zamichiell** would do so with a gun sitting in plain view on the front passenger seat. Without the dome light on, it would be nearly impossible for Officer Andrews to see a gun on the front seat through a closed, tinted window in the dark of night. The Court therefore credits Zamichieli's testimony that the gun was under the front passenger seat. Because the gun was not in plain view, the only way for the officers to find the gun it was to search the vehicle. Absent an applicable exception, the officers were not permitted to conduct a warrantless search of the Impala without probable cause to believe it contained evidence of criminal activity. *See United States v. Burton*, 288 F.3d 91, 100 (3d Cir. 2002). The Government has not met its burden of showing that the search was reasonable.

The Government argues that once Officer Andrews saw the gun in plain view, the officers had

© 2013 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

67271066

EXHIBIT A

probable cause to arrest **Zamichieli** for carrying a firearm without a license and, as a result, they were authorized to conduct a search incident to the arrest. (Gov't's Opp. to Def.'s Mot. to Suppress Physical Evidence and Statements and Mot. in Limine Seeking Severance at 7.) "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (internal quotation marks omitted). The search of "a vehicle incident to a recent occupant's arrest" is lawful "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search," or "when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 1719, 173 L. Ed. 2d 485 (2009). **Zamichieli** was not arrested for traffic violations, but rather for carrying a firearm without a license. Because the Court has found that the gun was not in plain view, the officers only had probable cause to arrest **Zamichieli** for an offense related to the gun after searching the vehicle. Therefore, the exception to the probable cause requirement for searches incident to arrest does not apply because there was no probable cause to arrest prior to the search. *See Knowles v. Iowa*, 525 U.S. 113, 118-19, 119 S. Ct. 484, 142 L. Ed. 2d 492 (1998) (holding that the exception does not apply when a police officer has probable cause to believe the defendant has committed a traffic offense but only issues a citation); *Smith v. Ohio*, 494 U.S. 541, 543, 110 S. Ct. 1288, 108 L. Ed. 2d 464 (1990) ("[The exception] does not permit the police to search any citizen without a warrant or probable cause so long as an arrest immediately follows.").

During a traffic stop, an officer is also entitled to "conduct a search of the passenger compartment, if he has a reasonable suspicion that the occupants might be armed and dangerous." *United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004) (citing *Michigan v. Long*, 463 U.S. 1032, 1049-50, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983)). "The court measures the reasonableness of the officer's suspicion by taking into account the totality of the circumstances." *United States v. Focareta*, 283 F. App'x 78, 83 (3d Cir. 2008) While the test is an objective one, "[t]he searching officer's subjective beliefs are part of the totality of the circumstances that the court examines when determining whether there was an objective basis" for the search. *Id.* at 84. Officers Andrews and Victor testified that this was a normal traffic stop and that **Zamichieli** was cooperative and made no suspicious or furtive movements. Without any objective basis to believe that **Zamichieli** was armed and dangerous, the officers lacked reasonable suspicion to search the Impala. Accordingly, this exception to the probable cause requirement is also inapplicable.

Because the search was conducted in violation of Zamichieli's Fourth Amendment rights, all evidence obtained in connection with the search, including the gun and any statements made by **Zamichieli** following the search, must be suppressed as fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 487-88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

## IV. CONCLUSION

The weapon underlying the charge against **Zamichieli** was obtained through an illegal search. As a result, the motion to suppress must be granted. An appropriate Order will be docketed separately.

## ORDER

**AND NOW**, this **9th** day of **December, 2011**, upon consideration of Defendant's Motion to Suppress Physical Evidence and Statements and the Government's responses thereto, following a hearing conducted on November 21, 2011, and for the reasons provided in this Court's Memorandum dated December 9, 2011, it is hereby **ORDERED** that the motion (Document No. 20) is **GRANTED**.

**BY THE COURT:**

© 2013 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

67271066

EXHIBIT A

/s/ Berle M. Schiller

**Berle M. Schiller, J.**

lyccases                                        4

© 2013 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

67271066

## *Philadelphia Police Department Arrest Report*

Page 1 of 2 *PARS*

| Defendant: last name: **ZANICHIELI** | | Sex: **Male** | SSN: 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 | DOB: 06/23/1972 |
|---|---|---|---|---|
| first name: **TROY** | middle initial: | Race: **Black** | | Birth Place: **Philadelphia** |

| Address: 605 ROBBINS | AV Philadelphia PA 19111-0000 | | Phone #: 215-000-0000 |
|---|---|---|---|

| Year: **2011** | District: **35** | DC#: **11-35-012559** | Sector: **3** | Ctrl#: **00000** |
|---|---|---|---|---|
| PID: **0717642** | SID: **20761636** | OTN: **N7283286** | Event: **220651955** | CBN: **1039480** |
| Crime Class: **1501** | | Desc: **Weapons (carrying, possession of) violation uniform firearms act (adults) handgun** | Authority: **Philadelphia Police Department** | |
| DFJ: **N** | | | FBI / FID: | |

| Arrest Name: WHEELER ZAMICHIELI | DOB: 06/23/1971 | SSN: |
|---|---|---|

Address given to PPD: 605 ROBBINS AV Philadelphia PA 19100

### ARREST INFORMATION:

Date / Time: 02/20/2011 02:28AM      District: 35      Inside/Outside: O      Arrest Type: **SA**

1900 CHURCH LN  Philadelphia PA 19100-

Slating Date: 02/20/2011     Slating Time: 06:16AM      Sum/Warr:          Issued By AC Magistrate:

### OCCURRENCE:

Date / Time: 02/20/2001 02:27AM      Date reported: 02/20/2011 02:28AM      Inside/Outside: O      Codefendants?: N

N  BEECHWOOD ST / CHURCH LN   Philadelphia PA 19100-

### FACTS OF THE CASE:

P/O VICTOR #5583 WAS INTERVIEWED AND STATED THAT WHILE WORKING WITH HIS PARTNER, P/O ANDREWS #3935 THEY WERE SURVEYING THE AREA AFTER A FOUNDED SHOOTING AT 2ND & LINTON STS. WHILE DOING SO, THE OFFICERS OBSERVED A CHEVY IMPALA TRAVELING AT A HIGH RATE OF SPEED IN THE AREA OF WISTER & NEDRO. P/O VICTOR STATED THAT THE OPERATOR OF THAT VEHICLE DISREGARDED A STOP SIGN AT THAT LOCATION AND ALMOST BROADSIDED THEIR MARKED POLICE VEHICLE. P/O VICTOR THEN STATED THAT THE OPERATOR CONTINUED TRAVELING ON WISTER AND THEN MADE A RIGHT ONTO CHURCH LN WHICH IS THE WRONG WAY ON A ONE WAY. THE OFFICERS WERE ABLE TO STOP THE VEHICLE AT BEECHWOOD & CHURCH LN. UPON APPROACHING THE VEHICLE, THE OPERATOR TRUNED ON HIS INTERIOR LIGHTS AND P/O ANDREWS OBSERVED A GUN ON THE PASSENGER SIDE AND IMMEDIATELY ALERTED HIS PARTNER. THE OPERATOR WAS REMOVED FROM THE VEHICLE AND A .38 CALIBER ROSSI REVOLVER WAS RECOVERED. THE GUN WAS LOADED WITH (5) "SPENT" FCC'S. THE OPERATOR WAS IDENTIFIED AS WHEELER T. ZAMICHIELI. DOB 6-23-71. THE WEAPON WAS PLACED ON A PROPERTY RECIEPT AND THE DEFENDANT WAS TRANSPORTED TO HOMICIDE FOR PROCESSING.

### CHARGES:

| Code | OC | Description | Grade | Counts |
|---|---|---|---|---|
| CC6105 | | VUFA-FORMER CONVICT | F2 | 001 |
| CC6106 | | VUFA-NO LICENSE | F3 | 001 |
| CC6108 | | VUFA-ON STREETS | M1 | 001 |

| REQUESTED HEARING DATE: | REQUESTED HEARING LOCATION: |
|---|---|
| 02/28/2011 00:00 | 806 CJC: 1301 Filbert Street |

### COMPLAINANTS AND WITNESSES:

*Complainant(s)*

P/OFF VICTOR MELVIN, MELVIN          Age: 99   Phone(H): 215-000-0000   Phone(W): - -

- - 14th Police District - Phila PA. 00000-

| ARREST REPORT BY: | Badge | Description | | Unit Id | Platoon | Squad | Group Id |
|---|---|---|---|---|---|---|---|
| DOVE RONALD RONALD | 8003 | 60 Homicide | | | 3 | 3 | C |

### ARREST REPORT APPROVED BY:

Supervisor- payroll no:                    Approval Code:

### POLICE PERSONNEL:

| Employee Name | Payroll Number | Badge | Dist/Unit | Platoon/Group | Vacation Dates | Vacation Description | Needed At Hearing Police/Sup | Arrest OFC. |
|---|---|---|---|---|---|---|---|---|
| DOVE RONALD RONALD | | 8003 | 60/3 | 3 C | 07/14/2011 to 07/28/2011 | Vacation | N / R | N |
| VICTOR MELVIN MELVIN | | 5583 | 14/0 | 3 E | 02/22/2011 to 02/22/2011 | Training | Y / R | Y |
| VICTOR MELVIN MELVIN | | | | E | 04/12/2011 to 04/22/2011 | Vacation | Y / R | Y |
| VICTOR MELVIN MELVIN | | | | E | 11/06/2011 to 11/16/2011 | Vacation | Y / R | Y |
| ANDREWS WILLIAM WILLIAM | | 3935 | | E | 08/11/2011 to 08/25/2011 | Vacation | Y / R | Y |

### ADDITIONAL INFORMATION:

Hits: Y          Statement?:          Lab User Fees Requested?: N          ADA Concerns?:

5

EXHIBIT C

# First Judicial District of Pennsylvania

*51CR00073562011*
*Troy Zanicheli*

*Preliminary Hearing Volume 1*
*April 26, 2011*



**CRS**
**Court Reporting System**

*First Judicial District of Pennsylvania*
*100 South Broad Street, Second Floor*
*Philadelphia, PA 19110*
*(215) 683-8000   FAX: (215) 683-8005*

*Original File 4-26-11^CW^VS^ZANICHIELI.txt, 17 Pages*
*CRS Catalog ID: 11060693*

Page 1

COMMONWEALTH VS ZANICHIELI

[1] IN THE MUNICIPAL COURT OF PHILADELPHIA COUNTY
[2] CRIMINAL TRIAL DIVISION
[3] - - -
[4] COMMONWEALTH : MC-51-CR-0007356-2011
[5] :
[5] vs. :
[6] :
[7] TROY ZANICHIELI :
[8] - - -
[9] April 26, 2011
[10] Courtroom 803 - Criminal Justice Center
[11] Philadelphia, Pennsylvania
[12] - - -
[13]
[14] B E F O R E: THE HONORABLE CHARLES HAYDEN, J.
[15]
[16] - - -
[17] PRELIMINARY HEARING
[18] - - -
[19]
[20]
[21]
[22]
[23]
[24]
[25]

Page 2

COMMONWEALTH VS ZANICHIELI

[1] APPEARANCES:
[2] GAURI GOPAL, ESQUIRE
Assistant District Attorney
[3] For the Commonwealth
[4]
MICHAEL PARLOW, ESQUIRE
[5] Attorney for the Defendant
[6]
[7]
[8]
[9]
[10]
[11]
[12]
[13]
[14]
[15]
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

Page 3

COMMONWEALTH VS ZANICHIELI

[1] INDEX
[2] - - -
[3] COMMONWEALTH'S EVIDENCE
[4] - - -
[5] WITNESS: DR CR RDR RCR
[6] OFFICER ANDREWS 4 6
[7]
[8]
[9]
[10]
[11]
[12]
[13]
[14]
[15]
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

Page 4

COMMONWEALTH VS ZANICHIELI

[1] THE COURT CRIER: State your name,
[2] your badge number, district or division, and
[3] spell your last name for the record.
[4] THE WITNESS: Officer Andrews, Badge
[5] No. 3935, assigned to the 14th District.
[6] - - -
[7] OFFICER ANDREWS, having been duly
[8] sworn/affirmed, was examined and testified as
[9] follows:
[10] - - -
[11] THE COURT: This is a one witness
[12] case for the Commonwealth.
[13] MS. GOPAL: Yes, Your Honor.
[14] THE COURT: Sequestration is still
[15] in effect and that's mutual sequestration for
[16] any defense witness.
[17] MS. GOPAL: Thank, Your Honor.
[18] - - -
[19] COMMONWEALTH'S EVIDENCE
[20] - - -
[21] DIRECT EXAMINATION
[22] - - -
[23] BY MS. GOPAL:
[24] Q. Good morning, officer.
[25] A. Good morning.

Page 9

COMMONWEALTH VS ZANICHIELI

[1] the objection.

[2] BY MR. PARLOW:

[3] Q.  Did you walk up to his car while he parked?

[4]       MS. GOPAL: Objection, Your Honor.

[5]       THE COURT: Overruled.  We got to

[6] get to the point where he sees the gun.

[7]       THE WITNESS:  The vehicle was

[8] already pulled over for violation.  We

[9] approached the vehicle.  Upon me approaching

[10] on the passenger side, I observed in plain

[11] view at 38 revolver under the passenger seat.

[12] BY MR. PARLOW:

[13] Q.  What color was it?

[14] A.  Black.

[15] Q.  And where exactly -- what part of the gun was

[16] in plain view in your opinion?

[17] A.  The entire gun.

[18] Q.  Was it by his feet?

[19] A.  It was on the passenger seat, sir.

[20] Q.  Oh, it was on the passenger seat?

[21] A.  Yes, sir.

[22] Q.  What kind of car was he operating?

[23] A.  Red Impala.

[24] Q.  Now, prior to observing the gun, did your

[25] partner or yourself pull out your gun to stop him?

Page 10

COMMONWEALTH VS ZANICHIELI

[1]       MS. GOPAL: Objection, Your Honor.

[2]       THE COURT:  Sustained.

[3]       THE WITNESS:  No.

[4]       THE COURT:  Sustained.

[5] BY MR. PARLOW:

[6] Q.  And who recognized or who observed the gun

[7] first?  Yourself or your partner?

[8] A.  I did.  I was on the passenger side.

[9] Q.  What did you do as soon as you saw the gun?

[10] A.  I announced gun.  And then immediately

[11] recovered the gun while my partner recovered the

[12] driver for our safety.

[13] Q.  Did my client make any sudden movements?

[14] A.  No.

[15]       MS. GOPAL: Objection, Your Honor,

[16] relevance.

[17]       THE COURT:  Overruled.

[18] BY MR. PARLOW:

[19] Q.  Did he reach for the gun at all?

[20] A.  Not towards the gun.

[21] Q.  Did he reach anywhere else?

[22] A.  No, my partner had his gun pointed at him at

[23] that point.

[24] Q.  Well, prior to your partner pulling the gun

[25] and prior to you yelling gun, did you see my client

Page 11

COMMONWEALTH VS ZANICHIELI

[1] reach towards any part of the car?

[2] A.  No.

[3] Q.  Was there anything else on the passenger side

[4] seat?

[5] A.  Not that I recall.

[6] Q.  Any papers?  Books?

[7]       MS. GOPAL: Objection, Your Honor.

[8]       THE COURT:  Overruled.  I'll allow

[9] it.

[10]       THE WITNESS:  Not that I recall.

[11] BY MR. PARLOW:

[12] Q.  Were there cars parked along the sides of the

[13] street?

[14]       MS. GOPAL: Objection, Your Honor.

[15]       THE COURT:  Overruled.  Goes to

[16] ability to remember.

[17]       THE WITNESS.  I don't think so.

[18] BY MR. PARLOW:

[19] Q.  Did either one of you, meaning yourself or

[20] your partner, call in when you're pulling the

[21] vehicle over?

[22]       MS. GOPAL: Objection, Your Honor.

[23]       THE COURT:  Sustained.

[24]       THE WITNESS:  Yes.

[25]       THE COURT:  You don't have to

Page 12

COMMONWEALTH VS ZANICHIELI

[1] answer.

[2]       MS. GOPAL:  Move to strike.

[3]       THE COURT:  Stricken.

[4] BY MR. PARLOW:

[5] Q.  Were you positioned in a stationary position

[6] in your vehicle when you first observed my client

[7] going down the street or were you actually driving

[8] the vehicle?

[9] A.  We were driving at that point.

[10] Q.  What street were you driving on?

[11]       MS. GOPAL: Objection, Your Honor.

[12]       THE COURT:  Sustained.

[13] BY MR. PARLOW:

[14] Q.  Do you recall what my client was wearing?

[15]       MS. GOPAL: Objection, Your Honor.

[16]       THE COURT:  Overruled, if he

[17] remembers.

[18]       THE WITNESS:  No.

[19] BY MR. PARLOW:

[20] Q.  Did he give you a hard time at all?

[21] A.  No, sir.

[22] Q.  Did you recover anything else from his person

[23] upon the search?

[24] A.  Not that I recall.

[25] Q.  And did you place my client under arrest or

EXHIBIT C

51CR00073562011
Troy Zanicheli

Page 13

COMMONWEALTH VS ZANICHIELI

[1] did you partner?

[2]     MS. GOPAL: Objection, Your Honor,

[3] relevance.

[4]     THE COURT: Overruled, if you

[5] remembers.

[6]     THE WITNESS: I believe my partner

[7] placed him in custody because he exited the

[8] driver's side.

[9] BY MR. PARLOW:

[10] Q.  Meaning my client exited the driver's side?

[11] A.  Yes.

[12] Q.  What kind of car did you say it was again?

[13]     MS. GOPAL: Objection, asked and

[14] answered.

[15]     THE COURT: Overruled.

[16]     THE WITNESS: It's a red Impala.

[17] BY MR. PARLOW:

[18] Q.  Did it have bucket seats or bench seats?

[19]     MS. GOPAL: Objection.

[20]     THE COURT: Overruled, I'll allow

[21] it.

[22]     THE WITNESS: I can't recall.

[23] BY MR. PARLOW:

[24] Q.  Did you ask him at any time to put his windows

[25] down?

Page 14

COMMONWEALTH VS ZANICHIELI

[1]     MS. GOPAL: Objection, Your Honor.

[2]     THE COURT: Sustained.

[3] BY MR. PARLOW:

[4] Q.  When you approached the car, can you judge the

[5] conditions of the windows?

[6]     MS. GOPAL: Objection, Your Honor.

[7]     THE COURT: Sustained.

[8] BY MR. PARLOW:

[9] Q.  Did you see the gun through an open door or a

[10] closed door?

[11] A.  Door was closed, sir.

[12] Q.  Was the window up?

[13]     MS. GOPAL: Objection, Your Honor.

[14]     MR. PARLOW: Judge, it goes to his

[15] ability to recall what happened with his

[16] observations.

[17]     THE COURT: Overruled. I'll allow

[18] it.  Go ahead.

[19]     THE WITNESS: I cannot tell you

[20] whether the window was up or down, but it was

[21] right there in the front seat and the door was

[22] closed.

[23] BY MR. PARLOW:

→ [24] Q.  Did you prepare a report in the case?

[25]     MS. GOPAL: Objection, Your Honor.

Page 15

COMMONWEALTH VS ZANICHIELI

[1]     THE COURT: Sustained.

[2] BY MR. PARLOW:

[3] Q.  Do you recall your partner saying whether my

[4] client put his windows down or not?

[5]     MS. GOPAL: Objection, Your Honor.

[6]     THE COURT: Sustained.

[7]     MR. PARLOW: That's all the

[8] questions I have.

[9]     THE COURT: Anything else?

[10]     MS. GOPAL: Nothing further, Your

[11] Honor.

[12]     THE COURT: You may step down.

[13]     - - -

[14]     (Witness excused.)

[15]     - - -

[16]     MS. GOPAL: And at this time the

[17] Commonwealth would mark and move the criminal

[18] extract of the defendant showing a prior

[19] conviction for possession --

[20]     MR. PARLOW: Judge, I would

[21] stipulate that he as a conviction that put the

[22] status of the current charges where Your Honor

[23] could possibly hold him for court.  As far

[24] what that was, I'll agree that it was a charge

[25] making him ineligible.

Page 16

COMMONWEALTH VS ZANICHIELI

[1]     THE COURT: Are you willing to

[2] accept that stipulation?

[3]     MS. GOPAL: Yes, Your Honor.  And

[4] that would make him ineligible to carry a

[5] firearm in the city and county of Philadelphia

[6] and with that Your Honor the Commonwealth.

[7] With that, Your Honor, the

[8] Commonwealth would rest for purposes of the

[9] preliminary hearing.

[10]

[11]     (Whereupon, argument was held off of

[12] the record.)

[13]     - - -

[14]     THE COURT: I'm satisfied that for

[15] the prima facie case, that's presented today,

[16] I'm satisfying they met their burden.

[17]     Therefore, I'm going to hold your

[18] client.

[19]     Your arraignment date is May 17th,

[20] 2011, Courtroom 1101 at 11 o'clock a.m.

[21]     - - -

[22]     (Hearing concluded.)

[23]

[24]

[25]

Page 17

COMMONWEALTH VS ZANICHIELI
CERTIFICATION

[1]
[2]
[3]          I hereby certify that the
[4]   proceedings and evidence are contained fully
[5]   and accurately in the notes taken by me on the
[6]   trial of the above cause, and that this copy
[7]   is a correct transcript of the same.
[8]
[9]
[10]           Melissa Weidenmiller
              Official Court Reporter

[11]
[12]
[13]
[14]
[15]
[16]
[17]
[18]
[19]          (The foregoing certification
[20]   of this transcript does not apply to any
[21]   reproduction of the same by any means unless
[22]   under the direct control and/or supervision
[23]   of the certifying reporter.)
[24]
[25]

Court Reporting System (Generated 2011/08/22 15:59:12)

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Report of Investigation**

| Title of Investigation: ZAMICHIELI, Wheeler T. | Investigation Number: 766075-11-0015 | Report Number: 2 |
|---|---|---|

## SUMMARY OF EVENT:

RESTORATION OF FIREARMS PRIVILEGES:  ATF Special Agent Patrick Henning contacted the ATF Firearms Trafficking Division and the Pennsylvania Board of Pardons to determine if Wheeler ZAMICHIELI had his firearms privileges restored.

## NARRATIVE:

1.    On February 25, 2011, Stephanie Forbes, Program Assistant with the ATF Firearms Trafficking Division, advised Agent Henning that ZAMICHIELI has not received relief from his federal firearms disabilities.

2.    On February 28, 2011, Jennifer Glass, Administrative Officer for the Pennsylvania Board of Pardons, advised Agent Henning that ZAMICHIELI has not applied for pardons for his felony convictions.

| Prepared by: Patrick J. Henning | Title: Special Agent, Philadelphia VI Field Office | Signature: | Date: 2/28/11 |
|---|---|---|---|
| Authorized by: Steven L. Bartholomew | Title: Acting Group Supervisor, Philadelphia VI Field Office | Signature: | Date: 2/28/11 |
| Second level reviewer (optional): Mark W. Potter | Title: Special Agent in Charge, Philadelphia Field Division | Signature: | Date: |

ATF EF 3120.2 (10-2004)
For Official Use Only

USAO000003

U.S. Department of Justice

Bureau of Alcohol, Tobacco, Firearms and Explosives

**Report of Investigation**

| Title of Investigation: ZAMICHIELI, Wheeler T. | Investigation Number: 766075-11-0015 | Report Number: 3 |
|---|---|---|

## SUMMARY OF EVENT:

FINGERPRINT COMPARISON:  On March 31, 2011, Philadelphia Police Department Fingerprint Technician Donna Russell examined and compared fingerprint cards from arrests of Wheeler ZAMICHIELI.

## NARRATIVE:

1.    On the above date, Technician Russell examined and compared fingerprint cards related to the arrests of Wheeler ZAMICHIELI on or about 02/20/11, 03/25/94, 03/23/93, and 10/26/88.  Technician Russell determined that all four sets of fingerprints belong to one and the same individual.

## ATTACHMENTS:

Pennsylvania State Police fingerprint card, arrest date 02/20/11
Fingerprint card, arrest date 03/25/94
Fingerprint card, arrest date 03/23/93
Fingerprint card, arrest date 10/26/88

| Prepared by: Patrick J. Henning | Title: Special Agent, Philadelphia VI Field Office | Signature: | Date: 3/31/11 |
|---|---|---|---|
| Authorized by: Steven L. Bartholomew | Title: Acting Group Supervisor, Philadelphia VI Field Office | Signature: | Date: 3/31/11 |
| Second level reviewer (optional): Mark W. Potter | Title: Special Agent in Charge, Philadelphia Field Division | Signature: | Date: |

ATF EF 3120.2 (10-2004)
For Official Use Only

USAO000004

1    A.     No.

2    Q.     All right.  And you went there for the sole

3    purpose of taking pictures, right?

4    A.     Correct, because I knew there might be a trial

5    in this case.

6    Q.     And you were taking pictures of all angles of

7    the car, right?

8    A.     A few angles.

9    Q.     All right.  So you didn't know what angle you

10   would want or not want, correct?

11   A.     I -- I think I took a picture from almost every

12   side.

13   Q.     All right.  You -- and since you didn't know

14   how the car was parked, you had the keys with you

15   so -- if you had to move it so you could take

16   pictures in certain angles?

17   A.     No.  I had no intention of going into that car

18   at any point.

19   Q.     So if there was a -- a problem with one of the

20   pictures you wanted to take because the car was

21   parked in a certain way, you wouldn't have moved the

22   car?

23   A.     That didn't even -- even enter into my

24   thinking, about how the car might have been parked

25   out there.  I just went out there hoping to find it

EXHIBIT G

GOVERNMENT
EXHIBIT
2B