IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WHEELER ZAMICHIELI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 12-cv-3200-GMS |
| | ) |
| WILLIAM ANDREWS, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

## I.    INTRODUCTION

The plaintiff, Wheeler Zamichieli ("the plaintiff"), a *pro se* litigant who is presently

incarcerated at the Federal Detention Center in Philadelphia, Pennsylvania, filed this civil rights

action in 2012. Before the court is the federal defendants' consolidated motion to dismiss the

plaintiff's third amended complaint and the plaintiff's opposition thereto. (D.I. 178.)

## II.    BACKGROUND

The case proceeds on the third amended complaint (D.I. 56) that raises numerous

constitutional and supplemental state claims against state and federal defendants. Counts VI and

VII are brought against the federal defendants and seek damages for alleged violations of the

Fourth and Fifth Amendments of the United States Constitution under *Bivens v. Six Unknown

Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971).[1]  The federal defendants

---

[1] A civil rights claim against a federal defendant is governed by *Bivens.* In *Bivens*, the Supreme Court created a federal tort counterpart to the remedy created by 42 U.S.C. § 1983 as it applies to federal officers. To state a claim under *Bivens*, a claimant must show (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law. *See Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001).

United States Attorney Zane David Memeger ("Memeger"), Assistant United States Attorney Virginia Paige Pratter ("Pratter"), and Alcohol, Tobacco and Firearms Agent Patrick Henning ("Henning") (collectively, the "federal defendants") move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

The court takes judicial notice that, following a lawful traffic stop, the plaintiff was arrested on February 20, 2011 by Philadelphia Police Department officers following their discovery of a weapon in the plaintiff's vehicle. (D.I. 56, ex.) A preliminary hearing was held in State court, following which, the presiding judge found that the government met its burden of a prima facie to hold the plaintiff for trial. (*Id.*) The United States Attorney's Office adopted the case for federal prosecution and, on July 12, 2011, a criminal complaint was filed against the plaintiff that had an affidavit attached to it that contained information obtained from Philadelphia Police Department officers including the seizure of a firearm. (*See United States of America v. Zamichieli*, 11-cr-00393-BMS (E.D. Pa. 2011) at D.I. 1.) A United States Magistrate Judge issued a federal arrest warrant and the plaintiff was arrested and detained. (*Id.* at D.I. 2, 3, 4.) The plaintiff was indicted on July 19, 2011 for violation of 18 U.S.C. § 922(g)(1) and detained pending trial. (*Id.* at D.I. 6, 10.) While awaiting trial, the court granted the plaintiff's motion to suppress the seized firearm. (*Id.* at D.I. 20, 30.) The motion was granted on December 9, 2011 and, on December 16, 2011, the United States filed a motion to dismiss the indictment. (*Id.* at D.I. 32.) The indictment was dismissed without prejudice on December 19, 2011.[2] (*Id.* at D.I. 33.)

---

[2] On April 19, 2012, the plaintiff was indicted in a second federal case for violating 18 U.S.C. § 922(g)(1), tried, and convicted by a jury on February 22, 2013. *See United States of America v. Zamichieli*, 12-cr-00182-LDD (E.D. Pa. 2012). The plaintiff proceeds *pro se* in the criminal matter and has filed a flurry of motions. He was recently granted leave to file a motion for a new trial. (*Id.* at D.I. 215.)

2

With regard to the federal defendants, Counts VI and VII of the Third Amended Complaint allege violations of the Fourth and Fifth Amendments, as follows: (1) that Memeger launched a malicious prosecution of the plaintiff on July 12, 2011 without probable cause, when he adopted the State arrest "even after defendant Andrews' contradicting accounts of the firearm in plain view at the preliminary hearing" on April 26, 2011; that Memeger knew that the plaintiff's Fourth Amendment rights were clearly established and through his investigations knew, or should have known, that those rights were violated by the Philadelphia police officer defendants (D.I. 56, ¶ 20); (2) that Pratter filed an indictment against the plaintiff on July 19, 2011, argued against the plaintiff's right to bail and, as a result, the plaintiff was unlawfully held in pretrial detention from July 13, 2011 through December 18, 2011; that Pratter withheld evidence of a photograph taken by Henning and disclosed it in a subsequent indictment and continued to maliciously prosecute the plaintiff through her investigation of the photograph, preliminary hearing transcripts, and arrest report prepared by a Philadelphia police officer; and knew, or should have known, that the Philadelphia Police Department officers did not have the requisite probable cause to conduct a warrantless search. (*Id.* at ¶¶ 23-25); and, (3) that Henning pursued an investigation of the plaintiff after his arrest on February 20, 2011, but before a prima facie case could be established; investigated the plaintiff's prior criminal history on March 31, 2011; pursued a malicious prosecution of the plaintiff other than for purpose of bringing him to justice; prepared a criminal complaint and arrest warrant, executed the warrant, took the plaintiff into custody, falsely arrested, and imprisoned the plaintiff without probable cause; and maliciously prosecuted the plaintiff by furthering the investigation of the plaintiff on July 13, 2011, until the plaintiff's vehicle was located and he took photographs that showed a vehicle

3

with very dark tinted windows. (*Id.* at ¶¶ 22-23.) The plaintiff seeks compensatory and punitive damages.

## III. LEGAL STANDARD

The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982).

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiently of the complaint. When reviewing a motion to dismiss, the court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). However, such "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting *Twombly*, and providing further guidance on the standard set forth therein).

4

Following *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit instructs that a district court must conduct a three-step analysis when considering a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of Am.*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

The federal defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that: (1) the claims against Memeger and Pratter are barred by the doctrine of absolute

prosecutorial immunity; (2) the third amended complaint fails to state a cognizable malicious

prosecution *Bivens* claim against Pratter; and (3) the claims against the individual federal

defendants are barred by the doctrine of qualified immunity.  The plaintiff opposes the motion.[3]

## IV.    DISCUSSION

### A.    Prosecutorial Immunity

Memeger and Pratter move for dismissal of the claims against them, based upon

prosecutorial immunity, on the grounds that the alleged acts occurred within the scope of their

roles as prosecutors.  The plaintiff argues that absolute immunity is inapplicable because

Memeger and Pratter were not acting as officers of the court, but instead, engaged in

prosecutorial misconduct while acting as an investigator or administrator.

Prosecutors should not be encumbered by the threat of civil liability while performing

judicial or quasi-judicial functions.  *See Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008).

Prosecutors acting within the scope of their duties in initiating and pursuing a criminal

prosecution are immune to suit under § 1983.[4]  *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976).

This generally means activities conducted in court, such as presenting evidence or legal

arguments.  *See Giuffre v. Bissell*, 31 F.3d 1241, 1251 (3d Cir. 1994) (citing *Imbler*, 424 U.S. at

430).  Prosecutorial activities outside the courtroom receive the same protection only if they are

"intimately associated with the judicial phase of the criminal process."  *Van de Kamp v.*

---

[3] To the extent the parties discuss allegations related to the plaintiff's criminal conviction in 12-cr-182-LDD, they are not addressed by the court as they are not the subject of the claims raised by the plaintiff in the third amended complaint.

[4] *Imbler* involved a claim under 42 U.S.C. § 1983.  However, there is no distinction for immunity purposes between suits brought against state officials under § 1983 and suits brought against federal officials under the Constitution.  *See Butz v. Economou*, 438 U.S. 478, 504 (1978); *Schrob v. Catterson*, 948 F.2d 1402, 1408-09 (3d Cir. 1991).

*Goldstein*, 555 U.S. 335, 341 (2009) (quoting *Imbler*, 424 U.S. at 430 (activities intimately associated with the judicial phase of the criminal process, casting the prosecutor as an advocate rather than an administrative or investigative officer, trigger absolute immunity).

Administrative or investigative actions are only protected by qualified immunity, *Id.* at 342 (citing *Imbler*, 424 U.S. at 431, n.33), unless the actions "relate directly to the conduct of a criminal trial." *Schneyder v. Smith*, 653 F.3d 313, 334 (3d Cir. 2011) (citing *Van de Kamp*, 555 U.S. at 344). A prosecutor's behavior that is totally unrelated to the prosecutorial role or exceeds the scope of his authority is similarly unprotected by absolute immunity. *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992) (citing *Rose v. Battle*, 871 F.2d 331, 346 (3d Cir. 1989)).

The fact that an individual is employed as a prosecutor does not mean the prosecutor is immune from suit for every wrong committed. *See Schneyder*, 653 F.3d at 331. The "inquiry focuses on 'the nature of the function performed, not the identity of the actor who performed it.'" *Odd*, 538 F.3d at 208 (quoting *Light v. Haws*, 472 F.3d 74, 78 (3d Cir. 2007)). "The court must ascertain just what conduct forms the basis for the plaintiff's cause of action, and it must then determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Id.* The court "focuses on the unique facts of each case" and carefully dissects the prosecutor's actions. *Id.* (citations omitted).

The Supreme Court has held that a prosecutor is absolutely immune from liability for the decision to initiate a criminal prosecution, *see Kalina v. Fletcher*, 522 U.S. 118, 129 (1997); *accord Kulwicki*, 969 F.2d at 1463 ("The decision to initiate a prosecution is at the core of a prosecutor's judicial role."), and for her decision to seek an arrest warrant, *see Kalina*, 522 U.S. at 129. Moreover, courts have held that a prosecutor's involvement "in either directing or approving [an individual's] arrest following the filing of the charges" is intimately related to the

7

judicial phase of the litigation, and thus entitled to absolute immunity. *Hudak v. Foulk*, 2007 WL 4287760, at *10 (W.D. Pa. Dec. 5, 2007); *see also Orobono v. Koch*, 30 F. Supp. 2d 840, 842 (E.D. Pa. 1998) ("Arresting a suspect is a necessary step in the initiation of a criminal prosecution. As a result, it can hardly be separated from the core functions of a prosecutor.").

Here, the plaintiff alleges that Memeger's actions violated his constitutional rights when Memeger launched the prosecution of the plaintiff even though, through investigation, Memeger knew, or should have known, that the plaintiff's Fourth Amendment rights were violated by reason of the contradictory testimony elicited during the State preliminary hearing on April 6, 2011. Initiation of the criminal proceeding is clearly an act entitled to absolute immunity. In addition, the plaintiff's conclusory allegation that Memeger should have known of a Fourth Amendment issue is contrary to other allegations in the complaint, most notably that the State court heard testimony during the preliminary hearing and held the plaintiff for trial (*see* D.I. 56, ex.), a United States Magistrate Judge issued an arrest warrant (*see* 11-cr-00393-BMS at D.I. 2), the plaintiff was indicted (*id.* at D.I. 6), and a United States Magistrate Judge detained the plaintiff for trial (*id.* at D.I. 9, 10), all of which occurred prior to the time the court granted the motion to dismiss on the Fourth Amendment search and seizure issue.

The acts of which plaintiff complains fit squarely within the realm of official prosecutorial duties. Accordingly, Memeger is entitled to absolute immunity and the court will grant the motion to dismiss on that ground.

With regard to Pratter, the plaintiff argues that she filed an indictment, argued against bail, withheld evidence, and continued in his prosecution even though she knew or should have known that the Philadelphia police officer did not have probable cause to conduct a warrantless search. Similar, to Memeger, Pratter is entitled to absolute immunity. Absolute immunity

attaches to the prosecutor's decision to initiate a prosecution. In addition, arguing against bail and continuing with the prosecution are clearly acts that occur during a judicial proceeding, and acts that required advocacy on her part. Absolute immunity also attaches to the acts taken by Pratter to the extent that she made decisions with regard to photographs taken by Henning and when to turn over evidence. *See, e.g., Henderson v. Fisher,* 631 F.2d 1115, 1120 (3d Cir. 1980) (prosecutor's handling of government's evidence is within the sweep of initiating and presenting the State's case); *Donahue v. Gavin,* 2000 WL 772819, at *3 (E.D. Pa. June 5, 2000) (prosecutor's failure to disclose material exculpatory evidence, whether intentional or inadvertent, is entitled to absolute immunity); *Roberts v. Toal,* 1995 WL 51678, at *2 (E.D. Pa. Feb. 8, 1985) (the decision whether to release evidence and the determination of whether evidence is exculpatory have been characterized as legal judgments made by a prosecutor in his capacity as advocate for the state, warranting immunity). Notably, as soon as the court granted the plaintiff's motion to suppress, Pratter moved to dismiss the indictment on behalf of the government.

Absolute prosecutorial immunity attached to the claims raised against Memeger and Pratter. Therefore, the court will grant their motion to dismiss.

## B.    Malicious Prosecution

The defendants move to dismiss the *Bivens* malicious prosecution claim against Pratter, to the extent that one is asserted, on the grounds that the allegations fail to state a claim upon which relief may be granted. The plaintiff argues that he has stated a cognizable malicious prosecution proceeding against the defendants having adequately alleged the required elements.[5]

---

[5] The defendants do not address the malicious prosecution claims raised against Henning. The claims raised against Henning will be address in the qualified immunity section, *infra.*

9

For the reasons discussed above, the malicious prosecution claim against Pratter, and to the extent one is raised against Memeger, will be dismissed given that they both have absolute immunity from all prosecutorial actions thus barring the malicious prosecution claims. *See e.g., Spiker v. Whittaker*, 553 F. App'x 275, 279 (3d Cir. 2014) (unpublished).

## C.    Qualified Immunity

The defendants move for dismissal of the claims raised against Henning on the grounds that the doctrine of qualified immunity renders him immune from suit. More particularly, the defendants argue the allegations do not establish that Henning violated established statutory or constitutional law and, in the alternative, were the court to conclude he did, his actions were not objectively unreasonable in light of the circumstances. The plaintiff argues that Henning acted outside the scope of his role as an ATF agent, knew that the February 20, 2011 search warrant was without probable cause, adopted the Philadelphia Police Department officers' reports when he sought an arrest warrant from the United State Magistrate Judge, and then arrested him without probable cause.

Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. *See Ashcroft v. al-Kidd*, __ U.S. __, 131 S.Ct. 2074, 2080 (2011). To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Id.* at 2078 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 2083. This "clearly established" standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can "'reasonably . . .

10

anticipate when their conduct may give rise to liability for damages.'" *Anderson, supra,* at 639 (quoting *Davis v. Scherer,* 468 U.S. 183, 195 (1984)).

"Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, 'in objective good faith.'" *Messerschmidt v. Millender,* __U.S.__, 132 S.Ct. 1235, 1245 (2012) (quoting *United States v. Leon,* 468 U.S. 897, 922–23 (1984)). The Supreme Court has also recognized an exception to such a clear indication if it is "obvious that no reasonably competent officer would have concluded that a warrant should issue." *Messerschmidt,* 132 S.Ct. at 1245 (citing *Malley v. Briggs,* 475 U.S. 335, 341 (1986)). However, the threshold for establishing this exception is high. *Messerschmidt,* 132 S.Ct. at 1245.

In third amended complaint the plaintiff alleges that Henning violated his Fourth Amendment right to be free from illegal seizures/unlawful pretrial detentions without probable cause and malicious prosecution and his Fifth Amendment right to equal protection and due process. These claims are based upon the allegations that Henning pursued an investigation of the plaintiff after his arrest on February 20, 2011, but before a prima facie case could be established, investigated the plaintiff's prior criminal history on March 31, 2011, pursued a malicious prosecution of the plaintiff other than for purpose of bringing him to justice; prepared a criminal complaint and arrest warrant, executed the arrest warrant, and took the plaintiff into custody, falsely arrested and imprisoned the plaintiff without probable cause, maliciously prosecuted the plaintiff by furthering the investigation of the plaintiff on July 13, 2011, until the plaintiff's vehicle was located and photographs taken showing a vehicle with very dark tinted windows. (*Id.* at ¶¶ 22-23.)

11

Based on the facts averred in the complaint, even if Henning violated the plaintiff's constitutional rights, the court finds that he did not behave unreasonably and therefore, is entitled to qualified immunity. The allegations are that the plaintiff was the subject of a lawful traffic stop during which time a weapon was discovered and seized by Philadelphia Police Department officers. Those officers issued reports. In addition, exhibits to the third amended complaint indicate that the plaintiff had a criminal history. In light of these allegations, it was not objectively unreasonable for Henning to investigate the plaintiff to determine if there were violations of federal criminal statutes. Nor was it objectively unreasonable for Henning to rely upon the reports of the Philadelphia police officers in preparing his arrest warrant, particularly in light of the allegations that the State court had issued an arrest warrant and held the plaintiff over for trial. Nor was it objectively unreasonable for Henning to arrest the plaintiff given that a United Magistrate Judge found probable cause to issue an arrest warrant. Hence, the court finds that Henning did not act unreasonably in obtaining an arrest warrant and relying upon the warrant to arrest the plaintiff which resulted in his detention pending trial. While the plaintiff was successful in his motion to suppress evidence, this in no way negates the fact that Henning did not behave unreasonably in relying on the accounts of the Philadelphia police office and, he is therefore entitled to qualified immunity. *See e.g., Woods v. Pettine*, 2015 WL 1072687, at *10 (E.D. Pa. Mar. 12, 2015). Finally, the court finds that Henning is entitled to qualified immunity as to any malicious prosecution claims because it would not have been clear to a reasonable police, in Henning's positions, that there was no probable cause to charge him federally.

Therefore, the court will grant the motion to dismiss as to the claims raised against Henning as they are barred by the doctrine of qualified immunity.

## V.    CONCLUSION

For the above reasons, the court will grant the federal defendants' motion to dismiss.

(D.I. 78.) The plaintiff's motion requesting information will be denied as moot. (D.I. 100.)

An appropriate order will be issued.

UNITED STATES DISTRICT JUDGE

_____ 17 ___, 2015
Wilmington, Delaware

13