IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WHEELER ZAMICHIELI,              )
                                 )
            Plaintiff,            )
                                 )
        v.                       )        Civil Action No. 12-cv-3200-GMS
                                 )
WILLIAM ANDREWS, et al.,         )
                                 )
            Defendants.          )

## MEMORANDUM OPINION

### I.  INTRODUCTION

The plaintiff, Wheeler Zamichieli ("Zamichieli"), a *pro se* litigant who is presently incarcerated at the Federal Detention Center in Philadelphia, Pennsylvania, filed this civil rights action in 2012. Currently pending are numerous motions filed by Zamichieli, including a motion for summary judgment. (D.I. 114, 115, 118, 121, 123.)

### II.  PROCEDURAL AND FACTUAL BACKGROUND

The case proceeds on the third amended complaint (D.I. 56) that alleges constitutional violations pursuant to 42 U.S.C. § 1983 and raises contains supplemental state claims.[1] Counts I, III, IV, and V are brought against the defendants Philadelphia police officers William Andrews ("Andrews") and Melvin Victor ("Victor") and detective Ronald Dove ("Dove"), in their individual and official capacities, and Count II is brought against the defendant the City of Philadelphia ("the City"). Count I alleges that Andrews, Victor, and Dove violated Zamichieli's Fourth Amendment right to be free from illegal search and seizure; Count II alleges that the City

---

[1] All federal defendants were dismissed by the court on March 17, 2015. (*See* D.I. 103, 104.)

violated Zamichieli's constitutional rights through its policy making authority and the institution

of its stop and frisk policy and procedures; Count III alleges malicious prosecution by Andrews,

Victor, and Dove; Count IV alleges that Andrews, Victor, and Dove conspired to deprive

Zamichieli of his constitutional rights; and Count V alleges false arrest and false imprisonment

by Andrews, Victor, and Dove.[2] Zamichieli seeks compensatory and punitive damages.

Following a lawful traffic stop in Philadelphia, Pennsylvania, Zamichieli was arrested on

February 20, 2011, after Andrew and Victor discovered a weapon in Zamichieli's vehicle. (D.I.

56, ex. A.) The arrest report was prepared by Dove. (*Id.* at ex. B.) Zamichieli posted bail the

next day. (D.I. 119, ¶ 2.) A preliminary hearing was held on April 26, 2011, in the Municipal

Court of Philadelphia County, Criminal Trial Division, Commonwealth of Pennsylvania and,

following the hearing, the presiding judge found that the government had met its burden of a

prima facie case and Zamichieli was held for trial. (D.I. 56 at ex. C.)

Andrews testified at the preliminary hearing for the Commonwealth of Pennsylvania, as

follows: He "observed in plain view a[] .38 revolver under the passenger seat. (*Id.* at ex. C at

34.) He saw the entire gun by Zamichieli's feet. (*Id.*) Next, Andrews testified that the gun was

on the passenger seat. (*Id.*) The door was closed, but Andrews could not say if the window was

up or down. (*Id.* at 35.) As soon as Andrews saw the gun, he announced "gun" and his partner

recovered the driver for their safety. (*Id.* at 34.) Zamichieli did not make any sudden movements

and he did not reach towards the gun or towards any part of the car. (*Id.*) Andrews' partner

placed Zamichieli in custody. (*Id.* at 35.)

---

[2]It appears that Counts III (malicious prosecution), IV (conspiracy), and V (false arrest/ false imprisonment) are raised under 42 U.S.C. § 1983 and are also brought as supplemental claims under Pennsylvania law.

The United States Attorney's Office adopted the case for federal prosecution and, on July 12, 2011, a criminal complaint was filed against Zamichieli in the United States District Court for the Eastern District of Pennsylvania. Attached to the complaint was an affidavit that contained information obtained from Philadelphia Police Department officers including the seizure of a firearm. *See United States of America v. Zamichieli*, 11-cr-00393-BMS (E.D. Pa. 2011) at D.I. 1. A United States Magistrate Judge issued a federal arrest warrant and Zamichieli was arrested and detained. (*Id.* at D.I. 2, 3, 4.) Zamichieli was indicted on July 19, 2011 for violation of 18 U.S.C. § 922(g)(1) and detained pending trial. (*Id.* at D.I. 6, 10.) While awaiting trial, Zamichieli filed a motion to suppress the seized firearm, a hearing was held with Andrews and Victor testifying at the suppression hearing (D.I. 56, ex. A), and the motion to suppress was granted by the court. (*Id.*)

In granting Zamichieli's motion to suppress, United States District Judge Berle M. Schiller ("Judge Schiller") set forth the background, as follows:

> At approximately 2:27 in the morning on February 20, 2011, Philadelphia Police Department Officers William Andrews and Melvin Victor were driving back to their district, having responded to several shootings in the adjacent district. At the intersection of Wister Street and West Nedro Avenue, the officers saw a red Chevrolet Impala speed through a stop sign and almost hit their patrol car. They turned on their lights and sirens and followed the Impala until it turned the wrong way on a one-way street and stopped. The officers testified that this was a normal traffic stop and that they were no longer searching for suspects in the shootings at the time.
>
> Officer Andrews approached the Impala on the passenger side, Officer Victor on the driver side. Officer Victor testified that the driver of the Impala, later identified as Zamichieli, turned on the interior dome light as the officers approached. Zamichieli denied ever turning on the dome light. Zamichieli turned and stuck his head out of the open window on the driver side, resting both arms on the window frame so that his body was facing Officer Victor, and asked why he had been pulled over.

3

Officer Andrews testified that he scanned the interior of the car as he approached, saw a .38 revolver sitting in plain view on the front passenger seat of the car, and yelled "Gun" to alert his partner. Officer Victor removed Zamichieli from the Impala, handcuffed him, and placed him in the back of the patrol car while Officer Andrews retrieved the firearm, which contained five spent shell casings. Officer Victor never saw where Officer Andrews found the gun. Both officers testified that Zamichieli was cooperative at all times during the stop and did not make any suspicious or furtive movements. The officers issued two citations for Zamichieli's traffic violations.

At the hearing, Zamichieli disputed Officer Andrews's claim that the gun was on the front passenger seat and testified that the gun was actually secreted under the front passenger seat. According to Zamichieli, the officers pulled him out of the car with guns drawn before conducting a search. The defense introduced into evidence a picture of the Impala, allegedly taken the month before the traffic stop, showing that the car had tinted windows. Zamichieli also testified that the car doors and passenger-side window were closed when the officers approached. Neither officer could remember whether the windows were tinted or whether the passenger-side window was up or down during the traffic stop. Officer Victor confirmed that he did not ask for a driver's license, registration, or proof of insurance while Zamichieli was in the car.

*United States v. Zamichieli*, 2011 WL 6133352, at *1 (E.D. Pa. 2011) (internal citations omitted).

The district court found that the initial traffic stop was lawful. *Id.* The court then weighed the evidence presented, found the officers' version of the story implausible, and further found that the government has failed to meet its burden of showing that the search was reasonable. *Id.* The court stated,

There was no reason for Zamichieli to turn on the dome light when he had already opened the driver-side window to speak with Officer Victor and was not asked to provide his paperwork--nor is it likely that Zamichieli would do so with a gun sitting in plain view on the front passenger seat. Without the dome light on, it would be nearly impossible for Officer Andrews to see a gun on the front seat through a closed, tinted window in the dark of night. The Court therefore credits Zamichieli's testimony that the gun was under the front passenger seat. Because the gun was not in plain view, the only way for the officers to find [] it was to search the vehicle. Absent an applicable exception, the officers were not permitted to conduct a warrantless search of the Impala without probable cause to believe it contained evidence of criminal activity . . . . Zamichieli was not arrested for traffic violations, but rather for carrying a firearm without a license. Because

4

the Court has found that the gun was not in plain view, the officers only had
probable cause to arrest Zamichieli for an offense related to the gun after
searching the vehicle. Therefore, the exception to the probable cause requirement
for searches incident to arrest does not apply because there was no probable cause
to arrest prior to the search . . . . Officers Andrews and Victor testified that this
was a normal traffic stop and that Zamichieli was cooperative and made no
suspicious or furtive movements. Without any objective basis to believe that
Zamichieli was armed and dangerous, the officers lacked reasonable suspicion to
search the Impala. Accordingly, this exception to the probable cause requirement
is also inapplicable.

*Id.* at \*2-3 (internal citations omitted).

The motion to suppress was granted on December 9, 2011 and, on December 16, 2011,

the United States filed a motion to dismiss the indictment. (*Id.* at D.I. 32.) The indictment was

dismissed without prejudice on December 19, 2011. (*Id*. at D.I. 33.) Zamichieli was held in

federal custody from July 13, 2011 through December 19, 2011. (D.I. 119, ¶ 3.)

Zamichieli moves for summary judgment on the following grounds: (1) in light of the

ruling by Judge Schiller, the defendants are precluded from relitigating issues or claims that have

already been adjudicated; (2) as to the false arrest claim, Andrews, Victor, and Dove "in

conspiracy" manufactured false evidence in the arrest affidavit in violation of the Fourth

Amendment; (3) as to the malicious prosecution claim, Andrews, Victor, and Dove did not have

probable cause to support the arrest and continued in a malicious prosecution with an improper

purpose; and (4) the City is responsible for the constitutional violations committed by its

employees by reason of its deficient stop and frisk policy.

## III.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely

5

disputed material fact relative to the claims in question. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-461 (3d Cir. 1989). Pursuant to Rule 56(c)(1), a non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . ." Fed. R. Civ. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 247-249. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586-587 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"). If the nonmoving party fails to make a sufficient showing on an essential element of

its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. at 322.

## IV.   DISCUSSION

### A.   Suppression Hearing Ruling in District Court

Zamichieli moves for summary judgment on the grounds that Judge Schiller's suppression hearing ruling precludes the defendants from relitigating issues or claims that have already been adjudicated. The defendants respond that the exclusionary rule[3] is inapplicable in § 1983 cases and collateral estoppel is inapplicable because privity does not exist between the defendants in the § 1983 action and the prosecution in the federal criminal matter. (D.I. 120.)

### 1.   Exclusionary Rule

The suppression of the gun found in Zamichieli's vehicle does not prevent this court from considering such evidence in connection with its analysis of Zamichieli's § 1983 claims. *See Woodyard v. County of Essex*, 514 F. App'x 177 (3d Cir. 2013) (unpublished) (for purposes of Fourth Amendment malicious prosecution claim, the criminal trial court's subsequent suppression of certain witnesses' out-of-court identifications was irrelevant to a determination of whether probable cause supported the arrest warrant and the indictment); *Cox v. Pate*, 283 F. App'x 37, 40 (3d Cir. 2008) (unpublished) (notwithstanding the exclusion of evidence from use in plaintiff's criminal proceeding, such evidence could support a finding of probable cause in plaintiff's subsequent § 1983 action for false arrest) (citing *United States v. Calandra*, 414 U.S.

---

[3]In general, the exclusionary rule bars the introduction of evidence obtained in violation of an individual's rights under the Fourth Amendment. *See United States v. Leon*, 468 U.S. 897, 906 (1984). The rule is not a means of vindicating individual rights, but is instead a means of encouraging authorities to conduct lawful investigations. *See id.* at 906-08.

338, 348 (1974) (instructing that "standing to invoke the exclusionary rule has been confined to

situations where the Government seeks to use such evidence to incriminate the victim of the

unlawful search"); *Hector v. Watt*, 235 F.3d 154, 157 (3d Cir. 2000) (victims of unreasonable

searches or seizures may recover damages directly related to the invasion of their privacy, but

such victims cannot be compensated for injuries that result from the discovery of incriminating

evidence and consequent criminal prosecution); *Kovala v. Steele*, 2011 WL 1828514, at *5 n.10

(M.D. Pa. 2011) (granting qualified immunity to defendant on Fourth Amendment malicious

prosecution claim and noting that the fact that evidence was ultimately suppressed in plaintiff's

criminal proceeding did not vitiate its relevance to a probable cause determination in a § 1983

malicious prosecution claim); *Grendysa v. Evesham Twp. Bd. of Educ.*, 2005 WL 2416983, at

*10 (D.N.J. Sept. 27, 2005) (noting in dicta that plaintiff's inculpatory statements, although

suppressed in his criminal prosecution, would "likely [be] admissible in the suit for malicious

prosecution").

 Although Judge Schiller suppressed the evidence seized from Zamichieli's vehicle, it still

may be considered when determining whether there was sufficient probable cause with regard to

the events of February 20, 2011.  The Third Circuit has declined to "continue [ ] application of

the exclusionary rule" in a plaintiff's criminal proceeding to a plaintiff's § 1983 civil suit,

explaining that the exclusionary rule which allowed the plaintiff to avoid criminal prosecution "is

not a personal constitutional right of the party aggrieved." *See Hector v. Watt*, 235 F.3d at 158;

*accord Konopka v. Borough of Wyoming*, 383 F. Supp. 2d 666, 675 (M.D. Pa. 2005) (while the

fruits of an allegedly illegal search may be inadmissible in criminal proceedings under the

exclusionary rule, the illegality of said search does not vitiate the existence of probable cause for

8

arrest where probable cause otherwise exists) and *Cox v. Pate*, 2007 WL 654317 at *3 (W.D. Pa. 2007).

Zamichieli contends that Judge Schiller's ruling obviates the need to analyze the issue of whether his constitutional rights were violated. However, based upon the law, the court concludes that Zamichieli may not invoke the exclusionary rule in this civil proceeding.

### 2.    Collateral Estoppel/Issue Preclusion

Zamichieli contends that, because he meets the requisites of collateral estoppel, the defendants are estopped from relitigating the Fourth Amendment issue given Judge Schiller's ruling that granted his motion to suppress in the criminal proceeding. The defendants argue that collateral estoppel is inapplicable.

To support his position, Zamichieli points to the following: (1) the Fourth Amendment issue is identical to that ruled upon by Judge Schiller; (2) Judge Schiller found that defendants violated his Fourth Amendment rights which resulted in a final judgment on the merits; (3) Victor, Andrews, Dove, and the City were parties to the prior action and/or are in privity with the party to the prior action; and (4) all the defendants had a full and fair opportunity to litigate the issue in the prior action.

"A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . . ." *Montana v. United States*, 440 U.S. 147, 153, (1979). Collateral estoppel specifically bars relitigation of an issue that was conclusively determined in a prior adjudication and that was essential to the original judgment. *See Witkowski*

9

*v. Welch*, 173 F.3d 192, 198 (3d Cir. 1999). By foreclosing subsequent disputes over issues on which a court has ruled, collateral estoppel promotes fairness and certainty, while preventing the wasteful expenditure of resources upon issues already resolved through adversarial proceedings. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Montana*, 440 U.S. at 153-54; *Witkowski*, 173 F.3d at 198-99. It is well-settled that the principles of collateral estoppel apply to § 1983 claims. *Allen*, 449 U.S. at 102-05; *Ingram v. Lupas*, 353 F. App'x 674, 676 (3d Cir. 2009) (unpublished).

Issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination." *Nationwide Mutual Fire Ins. Co.*, 571 F.3d 299, 310 (3d Cir. 2009) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-749 (2001)). "[T]he law of the issuing court – here, federal law – determines the preclusive effects of a prior judgment."); *see also Burlington N. R.R. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231 (3d Cir. 1995) ("[W]e apply federal common law principles of issue preclusion since we are examining the issue preclusive effect of a prior federal court action"). Under federal common law, the following four elements must be satisfied to bar further litigation: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 247-48 (3d Cir. 2010).

Defendants in a § 1983 action may raise a collateral estoppel defense when a plaintiff attempts to relitigate an issue decided adversely against him in a state criminal proceeding. *See Ingram*, 353 F. App'x at 676 (citing *Anela v. City of Wildwood*, 790 F.2d 1063, 1068 (3d Cir. 1986)). The opposite, however, is not true. *See Smith v. Hanuska*, 2011 WL 995985, at *5

10

(M.D. Pa. 2011).  A plaintiff's assertion that collateral estoppel bars a defendant in a § 1983 action from relitigating a Fourth Amendment issue decided adversely to the government in a criminal prosecution is without support in our jurisdiction.  *See id.*

Collateral estoppel does not apply because Andrews, Victor, Dove, and the City were not parties in Zamichieli's criminal proceedings.  In addition, the defendants are not in privity with the United States government.  A defendant in a § 1983 action, sued in his individual capacity, is not considered to be in privity with the government in a prior criminal prosecution.  *See Smith v. Holtz*, 210 F.3d 186, 199 n.18 (3d Cir. 2000) (citing *Morgan v. Gertz*, 166 F.3d 1307, 1309 (10th Cir. 1999)); *see also Kinslow v. Ratzlaff*, 158 F.3d 1104, 1106 (10th Cir. 1998) (holding that the dismissal of state criminal charges against plaintiff for lack of probable cause did not preclude defendant police officers in § 1983 action from relitigating the legality of the search and seizure because the officers were not parties to the criminal prosecution, were not in privity with the state, and officers' personal interests, which are not the same as the state's interests, were not at stake in the criminal prosecution); *Tierney v. Davidson*, 133 F.3d 189, 195 (2d Cir. 1998) (state court's ruling suppressing evidence not entitled to preclusive effect in § 1983 action against police officers as officers were not parties to the criminal prosecution nor in privity with the state).

Zamichieli's collateral estoppel/issue preclusion position fails as a matter of law.  Based upon the foregoing, the courts find that collateral estoppel does not bar relitigation of the Fourth Amendment claims in this civil proceeding.

**C.     Count I, 42 U.S.C. § 1983; Count IV, Conspiracy; Count V, False Arrest**

Zamichieli moves for summary judgment on the § 1983 claims and the Pennsylvania false

arrest[4] and conspiracy claims.[5] Zamichieli combines and addresses the three counts in moving

for summary judgment on the false arrest claim. (*See* D.I. 118 at 10, 12.)

With regard to the § 1983 claims, Zamichieli states that Andrews, Victor, and Dove

conspired and manufactured false evidence in the arrest affidavit which violated his

constitutional rights. He argues that Victor witnessed Andrews' illegal search and had the

opportunity to intervene, but failed to do so when he was allegedly interviewed by Philadelphia

Police Department detectives. Zamichieli argues that Dove's false affidavit and Andrews' false

testimony in the Municipal and District Court demonstrates by a preponderance of the evidence

---

[4]To succeed on a Fourth Amendment false arrest claim under Pennsylvania law, a
plaintiff must establish that the arresting individual lacked probable cause for the arrest. *See
Startzell v. City of Philadelphia*, 533 F.3d 183, 204 (3d Cir. 2008); *Mills v. City of Harrisburg*,
589 F. Supp. 2d 544, 551 (M.D. Pa. 2008). Probable cause to arrest requires proof of facts and
circumstances that would convince a reasonable, and honest officer that the person arrested has
committed a crime. *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993). Under § 1983,
liability for false arrest may be found when it is shown "by a preponderance of the evidence:
(1) that the police officer knowingly and deliberately, or with reckless disregard for the truth,
made false statements or omissions that create a falsehood in applying for a warrant; and (2) that
such statements or omissions are material, or necessary to the finding of probable cause."
*Toribio v. Spece*, 558 F. App'x 227, 229 (3d Cir. 2014) (quoting *Wilson v. Russo*, 212 F.3d 781,
787 (3d Cir. 2000)).

[5]To state a conspiracy claim under § 1983, a plaintiff must show that "persons acting
under color of state law conspired to deprive him of a federally protected right." *Ridgewood Bd.
of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999). In addition, there must be
evidence of actions taken in concert by defendants with the specific intent to violate that right.
*Williams v. Fedor*, 69 F. Supp. 2d 649, 665-66 (M.D. Pa.), *aff'd*, 211 F.3d 1263 (3d Cir. 2000)
(citing *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999)). A § 1983 conspiracy claim only arises
when there has been an actual deprivation of a right. *Andree v. Ashland Cnty.*, 818 F.2d 1306,
1311 (7th Cir. 1987); *see also Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990)
(recognizing that deprivation of a right was a necessary predicate to § 1983 conspiracy liability);
*accord Perano v. Township of Tilden*, 423 F. App'x (3d Cir. 2011) (unpublished). To state a
claim for civil conspiracy under Pennsylvania law, Plaintiff must allege that "two or more
defendants' acted in concert to commit an unlawful act or [to commit] a lawful act by unlawful
means, and that they acted with malice.'" *Ickes v. Grassmeyer*, 30 F. Supp. 3d 375, 402 (W.D.
Pa. 2014) (citation omitted).

that the defendants violated his statutory rights which a reasonable person knew, or should have known, they were violating. Zamichieli argues that Andrews, Victor, and Dove all have personal involvement in committing the Fourth Amendment violation as ruled upon by Judge Schiller. Finally, he argues that the existence of a conspiracy will be demonstrated because two or more conspirators (*i.e.*, Victor, Dove, and Andrews) reached an agreement to deprive him of his Fourth Amendment rights.

Zamichieli also argues that Andrews, Victor, and Dove manufactured evidence in the arrest affidavit. The arrest affidavit was not provided to the court.[6] In addition, Zamichieli argues that Victor had the opportunity to "intervene" but failed to do so when Victor was interviewed by Philadelphia Police Department detectives. Zamichieli did not provide the court with the substance of Victor's alleged interview. Zamichieli argues in a conclusory manner that Andrews' testimony is evidence that the defendants knew, or should have known, they were violating Zamichieli's constitutional rights. Finally, Zamichieli argues in a conclusory manner and without evidence, that a conspiracy "will be demonstrated" because Victor, Dove, and/or Andrews reached an agreement to deprive Zamichieli of his Fourth Amendment rights.

Zamichieli relies on arguments, supposition, and Judge Schiller's ruling to support his motion for summary judgment. As discussed above, Judge Schiller's ruling, alone, does not lead to the conclusion that summary judgment is appropriate on behalf of Zamichieli. Moreover, Zamichieli did not support his motion by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions,

---

[6]An arrest report is attached to the third amended complaint.

interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact" as is required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 56(c)(1)(A) & (B). Indeed, "the court is not obliged to scour the record to find evidence that will support a party's claims." *Perkins v. City of Elizabeth*, 412 F. App'x 554, 555 (3d Cir. 2011) (unpublished); *see also Holland v. New Jersey Dep't of Corr.*, 246 F.3d 267, 285 (3d Cir. 2001) (The court should not "be required to scour the . . . records and transcripts, without specific guidance, in order to construct specific findings of fact" to support its memorandum opinion and order.). At this juncture, Zamichieli has failed to present sufficient evidence to establish that Andrews, Victor, and Dove violated his constitutional rights.

With regard to the State law claims, Zamichieli argues that several factors exist to support his common law conspiracy and false arrest claims, including that: (1) Andrews was never interviewed by Philadelphia Police Department detectives with regard to where the firearm was seen or recovered; (2) Victor gave differing versions of the events to Philadelphia Police Department detectives and in his testimony before the District Court; and (3) Andrews was the only officer to appear and testify in Municipal Court, he gave false testimony in Municipal Court and, when questioned about his Municipal Court testimony when testifying in the District Court, stated there were discrepancies due to a typo.

Zamichieli argues, without providing evidence, that Andrews was not interviewed with Philadelphia Police Department detectives. In addition, he refers to Victor's testimony before the District Court and the Municipal Court, but this court was not provided with complete copies of the transcripts of either proceeding. As discussed above, the court is not obliged to scour the

record to find evidence to support Zamichieli's claims. Zamichieli has failed to present sufficient evidence to establish false arrest or conspiracy under Pennsylvania law.

For the above reasons, the court will deny Zamichieli's motion for summary judgment as to Counts I, IV, and V of the third amended complaint.

### D.    Count III, Malicious Prosecution

Zamichieli moves for summary judgment as to the malicious prosecution claims under § 1983[7] and Pennsylvania law, on the grounds that Andrews, Victor, and Dove did not have probable cause to support his arrest and continued in a malicious prosecution with an improper purpose. Zamichieli argues that the federal arrest warrant was issued based on fabricated information provided by Andrews, Victor, and Dove. Zamichieli contends that Judge Schiller's ruling granting the motion to suppress satisfies the elements of malicious prosecution.

As discussed above, Judge Schiller's ruling, alone, does not lead to the conclusion that summary judgment is appropriate on behalf of Zamichieli. In addition, Zamichieli failed to present evidence that, in arresting Zamichieli, Andrews, Victor, and/or Dove acted maliciously or with a purpose other than bringing Zamichieli to justice. At this juncture, no reasonable jury could find for Zamichieli on the malicious prosecution claims. Therefore, the court will deny Zamichieli's motion for summary judgment as to Count III.

-------------------

[7]"To prevail on a malicious prosecution claim under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *See McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009). The first four elements of a malicious prosecution claim are the same under Pennsylvania law, but a Pennsylvania malicious procedure claim does not incorporate the federal "deprivation of liberty" element. *Kossler v. Crisanti*, 564 F.3d 181, 186 n.2 (3d Cir. 2009).

### E.    Count II, Municipal Liability

Zamichieli moves for summary judgment against the City on the grounds that it is responsible for the constitutional violations committed by its employees by reason of its deficient stop and frisk policy.  Zamichieli contends that the Philadelphia Police Department carried out the stop and frisk policy which was made to conduct the City's business under State law. Zamichieli argues that the City failed to properly train the defendants to prevent the charging of suspects (including the plaintiff) with crimes for which the officers did not have probable cause. Zamichieli further argues that the City knew there was a need for training as a result of a lawsuit filed against the City in June of 2011.  Finally, he argues that the *Philadelphia Daily News* published an article in November 2015 about the lack of police training with regard to the stop and frisk policy.

A municipality may only be held liable under § 1983 when the "execution of a government's policy or custom . . . inflicts the injury." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990).  While a government policy is established by a "decisionmaker possessing final authority," a custom arises from a "course of conduct. . . so permanent and well settled as to virtually constitute law." *Id.*  (citing *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)).  Accordingly, a plaintiff seeking to recover from a municipality must (1) identify an allegedly unconstitutional policy or custom, (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the "moving force" behind the injury alleged; and (3) demonstrate a direct causal link between the municipal action and the alleged deprivation of federal rights. *Board of the County Comm'rs v. Brown,* 520 U.S. 397, 404 (1997).

16

Here, Zamichieli provide no evidence to support summary judgment as to Count II. The court was not provided with a description of the alleged deficient stop and frisk policy. Nor did Zamichieli provide any evidence regarding training, or the lack thereof, provided to police officers in executing the stop and frisk policy. Zamichieli refers to a prior lawsuit and a newspaper article that concern the stop and frisk policy, but neither were provided to the court.

Inasmuch as Zamichieli has failed to present sufficient evidence of municipal liability, the court will deny the motion for summary judgment as to Count II of the third amended complaint.

## V.    MISCELLANEOUS MOTIONS

### A.    Motions to Compel

On November 14, 2015, Zamichieli moved to compel the City to respond to his second request for production of documents and interrogatories. (D.I. 114.) The discovery was served on the City on February 24, 2014. (*See* D.I. 70.) On June 12, 2014, the City advised Zamichieli that it would promptly respond to the requests having discovered that Zamichieli had filed the discovery with the court, but had not served it upon the City. (D.I. 85.) On June 18, 2014, the City served its discovery responses upon Zamichieli. Zamichieli contends that the City failed to fully and completely respond to interrogatories 1 through 25 and request to produce 1 through 27. On January 22, 2016, Zamichieli filed another motion to compel the City to respond to his discovery requests. (D.I. 123.)

Pursuant to Fed. R. Civ. P. 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause,

17

the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Zamichieli's discovery requests to the City are docketed at D.I. 70. However, the court was not provided with the City's responses or objections to the requested discovery. As a result, it cannot determine if the responses and/or objections are proper. Therefore, the court will deny the motions to compel without prejudice to renew. (D.I. 114, 123.)

**B.    Motion to Comply with Rule 5**

Zamichieli moves the court for to order the defendants to ensure that all their filings are served upon Zamichieli via U.S. certified mail. (D.I. 115.) Zamichieli advises the court that defense counsel did serve him with several documents filed on behalf of the defendants. The court docket indicates that some documents were filed via CM/ECF, but were not mailed to Zamichieli, an incarcerated individual.

Rule 5 provides in part, that a paper is served by mailing it to the person's last known address - in which event service is complete upon mailing. Fed. R. Civ. P. 5(b)(C). Rule 5 does not require that service be made by certified mail. Accordingly, the court will deny Zamichieli's motion. (D.I. 115.) Defense counsel, however, is admonished that Zamichieli must be served by U.S. mail given his status as an incarcerated individual who does not have CM/ECF access.

**C.    Motion for Ruling on Fourth Amendment Claim and to Stay Remaining Summary Judgment Claims**

Zamichieli moves the court to rule only on the Fourth Amendment unreasonable search claims raised in his motion for summary judgment and to stay all other claims pending receipt of outstanding discovery. (D.I. 121) The court will deny the motion.

18

Zamichieli's discovery motions were denied without prejudice to renew. In addition, the court may consider further dispositive motions properly supported by evidence should the parties seek leave to file renewed dispositive motions.

## VI.    CONCLUSION

For the above reasons, the court will deny the plaintiff's motions to compel (D.I. 114, 123) without prejudice to renew and deny the remaining motions (D.I. 115, 118, 121).

An appropriate order will be issued.

UNITED STATES DISTRICT JUDGE

Mar  15 , 2016

Wilmington, Delaware

19